IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **EDGAR PIOTROWSKI,**<br><br>　　　　*Plaintiff,*<br>　v.<br><br>**SIGNATURE COLLISION CENTERS, LLC,**<br><br>　　　　*Defendant.* | Case No. 2:21-cv-02115-JDW |

## MEMORANDUM

Like so many people, the Covid-19 pandemic upended Edgar Piotrowski's life. At the outset of the pandemic, his doctor told him not to go to work, and his employer, Signature Collision Centers, LLC, told him not to stay home. Stuck between a rock and a hard place, he chose his health. When Signature fired him, he sued. The Court must now decide what claims can survive, including under the Emergency Paid Sick Leave Act ("EPSLA") that Congress passed in the pandemic's early days. Unfortunately, much about that statute reflects the hurried way in which Congress passed it, and the Court must now pick up the pieces of the statute's imprecise language. As explained below, the Court concludes that Mr. Piotrowski has stated claims against Signature for interference with his rights under the Americans with Disabilities Act and for denial of sick leave under the EPSLA, but he has not stated a plausible claim for retaliation under the EPSLA.

I.   **FACTUAL BACKGROUND**

Mr. Piotrowski was the General Manager of Signature's Lansdale location. His job duties included hiring and firing employees, overseeing estimates and repair work, communicating with clients and customers, and inventory sourcing. Mr. Piotrowski was and is an insulin dependent, Type-1 diabetic.

On March 17, 2020, in the first days of Covid-19-related shutdowns, Mr. Piotrowski emailed Signature to explain that his diabetes was a disability and to request and propose accommodations. The next day, Signature informed Mr. Piotrowski that he could use sick days or paid time off ("PTO") to cover his absences. In reply, Mr. Piotrowski reiterated his initial request and included multiple links to government-issued articles that address reasonable accommodations under the ADA in preparation for the pandemic (i.e., working from home and by Telework). Signature then told Mr. Piotrowski he had to be physically present to perform the essential functions of his position and that any additional days not covered by sick or PTO will be unpaid.

On March 19, 2020, Mr. Piotrowski submitted a note from his endocrinologist stating that he is immunosuppressed due to his diabetes and should "remain off" for two weeks. (ECF No. 7, ¶ 59.) After additional emails, Mr. Piotrowski spoke by phone with his superior and an HR representative. They told him that his doctor's note did not mention a reasonable accommodation for his disability. So, on March 25, 2020, Mr. Piotrowski provided Signature with a second doctor's note. That note stated, "Due to an increased risk of complications from the Coronavirus,

2

it is recommended that [Mr. Piotrowski] be provided with accommodations to work from at home [sic]." (*Id.* ¶ 66.) The next day, Signature told Mr. Piotrowski that it would not provide him with additional sick leave because the second doctor's note did not advise him to quarantine. Mr. Piotrowski asked exactly what he needed his doctor's note to say, and Signature agreed to provide him with precise language.

On April 1, 2020, Mr. Piotrowski received an email from Signature asserting that he had abandoned his position because he failed to send a follow-up email and/or submit a third doctor's note to Signature. Mr. Piotrowski's termination was effective March 31, 2020. (*Id.*)

Mr. Piotrowski filed the instant suit on July 7, 2021, alleging numerous violations under the ADA and EPSLA. He filed an Amended Complaint on July 20, 2021. Signature moved to dismiss Counts IV, V, and VI of the Amended Complaint. That motion is ripe for decision.

## II.    LEGAL STANDARD

Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is proper if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Fowler*

*v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp.*, at 555; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).  However, under Fed. R. Civ. P. 9(b), when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake."  The Court must disregard legal conclusions, conclusory statements, and rote recitals of the elements of a cause of action.  *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Iqbal*, 556 U.S. at 678.

## III.   ANALYSIS

### A.   ADA Interference Claim

Section 503 of the ADA makes it "unlawful to . . . interfere with any individual in the exercise or enjoyment of" rights under the ADA. 42 U.S.C. § 12203(b). It does not appear that the Third Circuit has set forth the elements for an ADA interference claim. Cases from other Circuits have adopted the test for anti-interference claims under the Fair Housing Act, 42 U.S.C. § 3617. *See, e.g.*, *Frakes v. Peoria Sch. Dist.*, 872 F.3d 545, 550 (7th Cir. 2017); *Brown v. City of Tucson*, 336 F.3d 1181, 1191–1193 (9th Cir. 2003). Signature urges the Court to adopt this standard, but even under that standard, Mr. Piotrowski has stated a claim. The Third Circuit has held that under the FHA, courts should give the word "interference" its dictionary definition: "the act of meddling in or hampering an activity or process."  *Revock v. Cowpet Bay West Condo. Ass'n.*, 853 F.3d 96, 112–113 (3d. Cir. 2017) (quote omitted).

4

Mr. Piotrowski has alleged conduct that meets that definition. He claims that each time he gave Signature a doctor's note, Signature moved the goalposts and asked for more information. Signature did that even though the ADA does not require any magic words to invoke its rights. Taken in the light most favorable to Mr. Piotrowski, Signature's conduct constitutes meddling in or hampering his ability to invoke his rights under the ADA.

### B.     Failure to Provide EPSLA Sick Leave Claim

The EPSLA requires covered employers to provide employees who are unable to work or telework with up to eighty hours of paid sick leave due to a variety of reasons related to COVID-19.  *See* Families First Coronavirus Relief Act ("FFCRA"), 134 Stat. 177, 195 (2020) (EPSLA § 5102(a)(1)–(6)).  One trigger for EPSLA sick leave is "[t]he employee has been advised by a health care provider to self-quarantine due to concerns related to COVID–19." 134 Stat. 195 (§ 5102(a)(2)).  A covered employer who violates the EPSLA violates the FLSA's minimum wage requirement.  *See* 134 Stat. 197 (§ 5105(a)(1)).

Mr. Piotrowski has pled a plausible claim for violation of this provision. His second doctor's note advised Signature that he should work from home. Although Signature complains that the doctor's note did not use the words "self-quarantine," the statute does not require exact words. It requires a hearth care provider to convey to the employer the substance of the requirement. When the Court reads Mr. Piotrowski's second doctor's note in the light most favorable to Mr. Piotrowski, the note does that.

Signature argues that the EPSLA was not yet in force when it terminated Mr. Piotrowski. Unfortunately, the statute is unclear on this point. Congress passed the FFCRA, which includes the EPSLA, on March 18, 2020. The statute states that the EPSLA "shall take effect not later than 15 days after the date of enactment of this Act." 134 Stat. at 198 (§ 5108). Nothing in the statute specifies what event would make the Act effective. So, Section 5108 says that the EPSLA came into force some time between March 20, 2020, and April 4, 2020. But nothing in the statute indicates when in that time frame it took effect.

Mr. Piotrowski claims that the EPSLA came into effect immediately because it provides that the sick leave coverage "shall be available for immediate use by the employee." 134 Stat. at 196 (§ 5102(e)(1)). But the Court has to read the EPSLA's provisions in context and with a view to their place in the overall statutory scheme. *See Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 320 (2014). And it must "work to fit, if possible, all parts into a harmonious whole," rather that adopting an interpretation that "would sow conflict within the statute." *United States v. Andrews*, 12 F.4th 255 (2021). If Mr. Piotrowski were correct, then the EPSLA had to take effect immediately, and Section 5108 would be a nullity. The better reading—one which harmonizes the statute's provisions—is that the statute took place some time between March 20 and April 4, and as soon as it took effect, employees could use the statutorily-mandated sick leave.

The parties have not briefed this issue in such a way that the Court may resolve the meaning of this statutory provision. When presenting a Rule 12(b)(6)

6

motion, the moving party bears the burden of persuasion. *See Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). Because Signature has not carried this burden, the Court will deny the motion. The Parties can raise issues concerning the EPSLA and its effective date in subsequent briefing. Hopefully, with a more developed record and a more fulsome statutory analysis, the Court will be able to resolve the issue.

### C. EPSLA Retaliation Claim

Section 5104 of the EPSLA makes it "unlawful for an employer to discharge, discipline, or in any other matter discriminate against any employee who—(1) takes leave in accordance with [the EPSLA]; **and** (2) has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act (including a proceeding that seeks enforcement of this Act), or has testified or is about to testify in any such proceeding." *See* 134 Stat. 178, 196–197 (§ 5104) (emphasis added). Signature argues Mr. Piotrowski is unable to satisfy the conditions of Section 5104 because he neither took leave pursuant to the EPSLA nor initiated any type of enforcement proceeding against Signature prior to this lawsuit. Mr. Piotrowski responds that his "request and attempt" to take leave under the EPSLA is sufficient in light of the Act's "remedial and humanitarian purpose." (ECF No. 13-1 at 15.)

On its face, the EPSLA requires a plaintiff to take both steps—(1) take leave and (2) file a complaint or institute a proceeding—in order to assert a retaliation claim. The Supreme Court has reiterated that "[o]nly the written word is the law."

7

*Bostock v. Clayton Cty.*, 140 S. Ct. 1731, 1737 (2020). "[P]eople are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration." *Id.* at 1749. These principles require the Court to enforce the statute as written, and Congress wrote the statute using the conjunctive word "and," which requires the satisfaction of both elements.

Mr. Piotrowski urges the Court to interpret the statute "consistent with its remedial and humanitarian purpose . . .." (ECF No. 13-1 at 15.) He cites several cases from courts around the country that he says support such an interpretation. But none of those courts confronted this question of statutory interpretation, nor is it clear that the parties asked them to do so. Mr. Piotrowski also argues that a claim under the EPSLA is "coterminous" with a claim under the Fair Labor Standards Act because a violation of the EPSLA is a violation of the FLSA. (*Id.* at 14.) But the FLSA and the EPSLA do not use identical language. The FLSA's anti-retaliation provision applies to any employer that retaliates because an employee has "filed any complaint or instituted or caused to be instituted any proceeding . . .." 29 U.S.C. § 215(a)(3). It does not include a requirement that the employee has invoked any statutory provision, and it does not use the word "and."

Even if the Court were certain that Congress did not mean to impose a conjunctive requirement, the Court would not be free to disregard Congressional language in a quest to serve a Congressional purpose. And the Parties have done nothing to demonstrate that Congress did not intend to impose the requirement

8

that it imposed as part of the EPSLA. The Court must enforce the statute as written. Using that standard, Mr. Piotrowski cannot prevail on his claim for retaliation under the EPSLA, so the Court will dismiss that claim with prejudice.

## IV. CONCLUSION

Everyone here is in uncharted territory. Mr. Piotrowski and Signature were in March 2020, when they tried to figure out how to function in a world suddenly overtaken by a virus. And the Court is now, as it tries to sort through language that Congress adopted but which lacks clarity. Mr. Piotrowski can pursue his ADA interference claim and his denial-of-sick-leave claim, but he cannot pursue his EPSLA retaliation claim. An appropriate Order follows.

**BY THE COURT**

*/s/ Joshua D. Wolson*
HON. JOSHUA D. WOLSON
United States District Judge

October 8, 2021